# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LA'TASHA ASKEW,

        Plaintiff,        CASE NO. 17-10472
                                  HON. DENISE PAGE HOOD

v.

ENTERPRISE LEASING COMPANY OF DETROIT, LLC,

        Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#34]

### I. BACKGROUND

On February 14, 2017, Plaintiff La'Tasha Askew ("Askew") filed a Complaint against Defendant Enterprise Leasing Company of Detroit, LLC ("Enterprise") alleging that Enterprise violated her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 (Counts I-II); Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Counts III-V); and the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2202 (Counts VI-VIII). (Doc # 1) On December 21, 2018, Enterprise filed a Motion for Summary Judgment. (Doc # 34) Askew filed her Response on January 30, 2019. (Doc # 37) Enterprise filed its Reply on February 20, 2019. (Doc # 39) The Court notes that on January 10, 2019,

1

the Court extended the briefing schedule, and the Response and Reply are deemed timely. (Doc # 35)

The facts alleged by Askew are as follows. Askew is an African-American woman who was previously employed by Enterprise. (Doc # 1, Pg ID 3) She worked at various Enterprise locations in Michigan from July 2010 through January 2016. (*Id.*) She was promoted twice during her tenure with Enterprise. (*Id.*) While she was at Enterprise's Royal Oak location as a branch manager, she was supervised by Noah Fox ("Fox"), who allegedly discriminated against her because of her sex, pregnancy, and race. (Doc # 34-4, Pg ID 840-841) Although Askew claims that she repeatedly complained to Fox's supervisor, Vincent LaBella ("LaBella"), about how she was being treated by Fox, no actions were taken to remedy the situation. Askew additionally complained to her HR representative, Caitlin Rourke ("Rourke"), about the discrimination Plaintiff faced. (Doc # 37-18; Doc # 34-3)

On or about April 5, 2015, Askew became pregnant, and soon thereafter, informed Enterprise of her pregnancy. (*Id.* at 4.) Askew asserts that after Enterprise was notified about her pregnancy, she received a series of unwarranted and pretextual write-ups. (*Id.*) Askew also claims that she was required to wash cars during her pregnancy because Enterprise remained short-staffed even though Askew had requested for months (even prior to her pregnancy) that Enterprise hire additional staff members to assist her with the branch's responsibilities. (*Id.*)

On October 1, 2015, Askew took FMLA-qualified leave for the remainder of her pregnancy. (*Id.*) Askew's leave was approved with Enterprise in accordance with Enterprise's FMLA leave policies. (*Id.*) According to Askew, she was replaced by Chris Picklo ("Picklo"), a less-qualified white male, on October 19, 2015. (Doc # 37, Pg ID 1230) Following the birth of Askew's child, on December 2, 2015, she called Enterprise to inquire about when she could return to work. (*Id.*) Enterprise responded by requiring Askew to obtain clearance from her doctor before she could resume any of her former work activities. (*Id.*) Askew subsequently provided Enterprise with the necessary clearance from her doctor, and returned to work on December 28, 2015. (*Id.* at 4-5.) On January 26, 2016, Askew was terminated from Enterprise due to her alleged unsatisfactory performance. (*Id.* at 5.) Askew argues that her termination was a discriminatory action taken against her on the basis of her sex, pregnancy, and race.

Askew seeks monetary and nonmonetary compensatory damages, exemplary and punitive damages, and lost wages and benefits, past and future, in whatever amount she is found to be entitled. (*Id.* at 14.) Askew requests that she be awarded double damages under the FMLA. (*Id.*) Askew asks that the Court enter an order reinstating her to the positions she would have had if not for her termination. (*Id.*) Askew additionally requests that the Court issue an injunction prohibiting any further acts of discrimination by Enterprise. (*Id.*)

## II. ANALYSIS

### A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the court must view admissible evidence in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. FMLA

Two of Askew's claims are brought forward under the FMLA, which states "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). The Sixth Circuit recognizes two distinct theories under the FMLA: (1) the "interference" theory, and (2) the "retaliation" theory. *Seeger v. Cincinnati Bell Telephone Co.*, 681 F.3d 274, 282 (6th Cir. 2012). Under the "interference" theory, "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred, regardless of the intent of the employer." *Id.* (internal quotations and citations omitted). But, under the "retaliation" theory, the intent of the employer is relevant, and the inquiry is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Id.*

#### *1. Interference Claim*

It is unlawful for employers to "interfere with, restrain or deny the exercise of or attempt to exercise, any [FMLA] right provided." 29 U.S.C. § 2615(a)(1); *Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008). To establish a *prima facie* case of FMLA interference, also known as failure to restore, a plaintiff must show that: (1)

5

she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled. *Id.*; *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). Employees returning from FMLA leave are not entitled to restoration unless their employment would have continued had they not taken FMLA leave. *Grace*, 521 F.3d at 669.

Once a plaintiff establishes a *prima facie* case of FMLA interference, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason to justify its actions. *Id.* If the employer provides a legitimate reason, the burden shifts back to the plaintiff to show pretext. *Id.* at 670.

Enterprise argues that Askew received her full twelve weeks of paid leave and benefits that she was entitled to and was returned to her previous position following the conclusion of her FMLA leave. Askew contends that Enterprise devised a plan to terminate her after learning that she was going to return to her previous position. Askew asserts that her contention is supported by the fact that Enterprise: (1) attempted to fill her position in October 2015 on a permanent basis; (2) hired another person for her branch; (3) boxed up her belongings from her office and placed them in storage; (4) tried to discourage her from returning to work and required her to have a doctor's note if she did wish to return; (5) explicitly stated that it did not

6

believe that Askew would return from leave; and (6) did not make any arrangements regarding where to place Picklo when Askew returned from her leave.

The Court finds that Enterprise did not violate Askew's FMLA rights under an interference theory. In Askew's Complaint, she clearly indicates that upon finding out that she was pregnant, she notified Enterprise, and was then granted time off from work. Askew cannot make out a *prima facie* case that demonstrates that Enterprise interfered with her FMLA rights because as she concedes, she was not denied any FMLA benefits. Askew responds to Enterprise's argument by offering reasons as to why she believes Enterprise chose to terminate her. However, Askew fails to address the fact that she was afforded proper benefits under the FMLA. The Court **GRANTS** Enterprise's Motion as it pertains to Askew's FMLA interference claim.

### 2. *Retaliation Claim*

To establish a *prima facie* case of FMLA retaliation, a plaintiff must show that: (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). To show a causal connection, a plaintiff "must produce

sufficient evidence to support an inference that [the defendant] took the adverse employment action because" the plaintiff engaged in protected activity. *Ozier v. RTM Enterprises of Georgia, Inc.*, 229 Fed. App'x 371, 377 (6th Cir. 2007). If the defendant provides a legitimate, nondiscriminatory reason for terminating the plaintiff, the burden shifts back to the plaintiff to show that the defendant's stated reasons are a pretext for unlawful discrimination. *Id.* Temporal proximity alone cannot be the sole basis for finding pretext. *Seeger*, 681 F.3d at 285. However, temporal proximity coupled with other independent evidence may indicate pretext. *Id.*

Enterprise concedes that the first three prongs are satisfied. However, Enterprise argues that there is not a causal connection between Askew's FMLA leave and her termination. Specifically, Enterprise contends that Askew was terminated based on her repeated failures to regularly open her branch on time, and claims that Askew was counselled about this exact issue prior to taking her FMLA leave. Askew responds by claiming that there is evidence of temporal proximity between her return from FMLA leave and her termination, which she claims demonstrates the existence of a causal connection for purposes of the fourth prong. Askew cites to several Sixth Circuit cases to support her argument and claims that courts have held that up to a four-month lapse between a protected FMLA activity and an adverse employment action is sufficient temporal proximity, which satisfies

the last prong of the analysis. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018)[1]

The Court finds that there is a genuine dispute regarding the causal connection between Askew's return from FMLA leave and her termination. The nearness in time between Askew's return and her termination—less than four weeks—suffices to meet the threshold of proof required for the fourth prong. *See Seeger,* 681 F.3d at 284-285. Due to relatively short amount of time that passed following Askew's return from FMLA leave and her termination, the Court finds that a reasonable factfinder could determine that the fourth prong has been satisfied.

Enterprise asserts that it has offered a legitimate, non-discriminatory reason for terminating Askew, that being that she was repeatedly late for work. Enterprise further asserts that Askew cannot establish that her tardiness was a pretextual reason for taking the adverse employment action against her. Askew responds by arguing that Enterprise's reason for terminating her is pretextual since Enterprise's justification for why it terminated Askew changed over time. Askew argues that even though Rourke said during her deposition (Doc # 34-19) that Askew was only terminated due to her tardiness, on Rourke's completed "termination checklist for

---

[1] Askew claims that in *Rogers*, the court found a four-month lapse between a protected activity and an adverse employment action to be sufficient for a finding of a causal connection. In *Rogers*, however, there was actually only a little more than a two-month lapse between the protected activity and adverse employment action that was taken against the plaintiff. *See Rogers*, 897 F.3d at 776.

management," (Doc # 37-33) the "unsatisfactory performance" box was *checked* as the reason for Askew's termination, while the "tardiness" box was *unchecked*.

The Court finds that Askew has demonstrated that there is a genuine dispute regarding whether Enterprise's reason for terminating Askew is pretextual. Enterprise has provided the Court with an alternative reason as to why Askew was terminated—her tardiness. However, Askew has presented the Court with sufficient evidence from which a jury could find Enterprise's reason for Askew's termination to be pretextual. "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) (citations omitted).

Askew has sufficiently presented evidence of a *prima facie* case for her FMLA claim under a retaliation theory at this stage. The Court **DENIES** Enterprise's Motion as it pertains to Askew's FMLA retaliation claim.

### C. Title VII and ELCRA

#### 1. Discrimination Claims

Askew argues that she was discriminated and retaliated against under Title VII and the ELCRA due to her sex, pregnancy, and race. Under both Title VII and the ELCRA, a "plaintiff bringing a[n] ... employment discrimination claim must present either direct evidence of discrimination, or circumstantial evidence that allows for an inference of discriminatory treatment." *Reeder v. City of Wayne*, 177

F.Supp.3d 1059, 1079 (E.D. Mich. 2016) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003) ). Askew has not argued that there is any direct evidence of discrimination, and only attempts to demonstrate the existence of circumstantial evidence.

When a plaintiff seeks to prove discrimination by circumstantial evidence, the court applies the *McDonnell Douglas* framework. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir.2000). First, a plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) that she was qualified for the job and performed her duties satisfactorily; (3) that despite her qualifications and performance, she suffered an adverse employment action; and (4) that she was replaced by a person outside of the protected class or was treated less favorably than a similarly situated individual outside of the protected class. *Id.* at 572-573. If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 604 (E.D. Mich. 2016) (internal citations omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ). "Circumstantial evidence ... is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action against the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *McDonnell Douglas*, 411 U.S. at 805. Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805.

A plaintiff can establish pretext by producing evidence sufficient for a jury to reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against the plaintiff. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) ("A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct").

Enterprise concedes that the first and third prongs of the *McDonnell Douglas* framework are satisfied, but disputes that the second and fourth prongs have been met. Regarding the second prong, Enterprise argues that Askew was not qualified based on her previous work performance. Enterprise contends that Askew did not meet its expectations by failing to open her branch on time and arriving late to work,

and further asserts that this was expressed to Askew when she was placed on a Performance Improvement Plan on September 30, 2015. Askew responds by arguing that she cannot be considered unqualified for her position solely because she was tardy to work on two occasions. Askew also claims that the Court should consider whether she has demonstrated that there is credible evidence that her "qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler*, 317 F.3d at 575-576. According to Askew, she unequivocally meets the objective educational and experience qualifications for a branch manager since she has a college degree, passed all necessary promotional exams, and performed her job exceptionally well for nearly two years.

To establish this element, a plaintiff must show that her performance met her employer's legitimate expectations at the time of her discharge. *McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.,* 440 F.3d 320, 334 (6th Cir.2006). "[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Wexler*, 317 F.3d at 574. At the prima facie stage, "a court should focus on a plaintiff's objective qualifications to determine whether he or she is

qualified for the relevant job." *Id.* at 575. A plaintiff can meet the *prima facie* burden of showing he or she is qualified "by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id.* at 575-76. "Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576.

The Court finds that the facts support that Askew was qualified for her position based on her credentials. Enterprise has not argued to the contrary, and its only argument opposing Askew's qualifications consists of contending that she was not qualified for her position because of her repeated tardiness. Enterprise's argument is misplaced, and is inconsistent with the Sixth Circuit's definition of qualified. *See id.* at 575-76. Since Askew's objective qualifications "are at least equivalent to the minimum objective criteria required for employment" in her field, she is qualified for the position that she held at Enterprise. Even if the Court were to consider Askew's instances of tardiness, the Court's conclusion would remain the same because Enterprise does not typically terminate branch managers based on tardiness alone. (Doc # 34-19, Pg ID 897)

As to the fourth prong, Enterprise argues that Askew has not identified any similarly-situated employees who were treated differently than she was. Enterprise

contends that Askew has not shown that there was another worker who reported to Fox or LaBella about facing discrimination and was treated dissimilarly. Askew responds by arguing that another branch manager, David Zaske, a white male, consistently had negative revenue and growth numbers with no repercussions. (Doc # 37, Pg ID 1227-1228)

The Court finds that the fourth prong has been satisfied. In Enterprise's Motion, its argument pertaining to the fourth prong is premised on there not being a similarly situated employee who Askew has referred to in order to satisfy her *prima facie* case. However, Enterprise does not address the fact that under the *McDonnell Douglas* framework, a plaintiff must demonstrate that he or she was replaced by a person outside of his or her protected class *or* was treated less favorably than a similarly situated individual outside of his or her protected class. *Johnson*, 215 F.3d at 572-573. The standard that Enterprise applies is more limiting than the fourth prong of the aforementioned framework. In this case, Askew has sufficiently shown that Picklo, a person outside of the applicable protected class, replaced her.

Enterprise argues that even if Askew could make out her *prima facie* case for sex, pregnancy, or race discrimination under Title VII and the ELCRA, it terminated Askew because of her tardiness, which it considers to be a legitimate non-discriminatory reason for taking an adverse employment action against Askew. As noted above, the Court finds that Askew has shown that there is a genuine dispute

regarding whether this justification is considered pretextual. The Court **DENIES** Enterprise's Motion as it pertains to Askew's Title VII and ELCRA discrimination claims.

### 2. *Retaliation Claims*

Since Askew does not argue that there is any direct evidence demonstrating that Enterprising retaliated against her, the Court will examine Askew's retaliation claims based on circumstantial evidence. To establish a prima facie case of retaliation under Title VII, a plaintiff has the initial burden of establishing four elements: (1) the plaintiff engaged in protected activity; (2) the defendant knew about the plaintiff's exercise of this right; (3) the defendant took an employment action adverse to the plaintiff; and (4) the protected activity and the adverse employment action are causally connected. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for its action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (citation omitted). If the employer meets that burden, it is the plaintiff's burden to demonstrate, by a preponderance of the evidence, that the legitimate reason given by the employer was pretext for retaliation. *Id.*

Enterprise only challenges whether the first and fourth prongs have been met. Regarding the first prong, Enterprise argues that Askew's communications to

management are not considered *protected activity* because her complaints did not mention that she was being discriminated against based on her *sex*, *pregnancy*, or *race*. Additionally, Enterprise claims that Askew's complaints do not suggest that she has been discriminated against, but instead, indicate that she had a problem or personality conflict with Fox. Askew responds by asserting that she complained on various occasions to Rourke, Fox, and LaBella about the discrimination that she experienced at work. Askew further contends that courts have held that there are no magic words required for a finding of protected activity, and claims that all that is required is that an employer be alerted about an employee's belief that discrimination persists in the workplace. *Brown v. UPS,* 406 F. App'x 837, 840 (5th Cir. 2010).

The "opposition" clause of Title VII's anti-retaliation provision states that "it shall be an unlawful employment practice for an employer to discriminate against any ... employee[ ] ... because [the employee] opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e–3(a). A demand made by an employee that "a supervisor cease his/her harassing conduct constitutes protected activity covered by Title VII." *EEOC v. New Breed Logistics,* 783 F.3d 1057, 1067 (6th Cir.2015). "Title VII does not protect an employee, however, if his opposition is merely a 'vague charge of discrimination.' " *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015) (citations omitted). Although vague

17

complaints do not constitute opposition, a plaintiff's complaint does not have to "be lodged with absolute formality, clarity, or precision." *Stevens v. Saint Elizabeth Med. Ctr., Inc.,* 533 Fed.Appx. 624, 631 (6th Cir.2013).

The Court finds that Askew has satisfied the first prong. Askew made several attempts to address the discrimination that she believed she was facing in her work environment. (Doc # 37, Pg ID 1245) Management received complaints from Askew about discrimination and investigated the veracity of these claims. (*Id.*) In opposition to Askew's claim that she has met the first prong, Enterprise disputes the thoroughness of her complaints, but does not question whether Askew actually made complaints. According to the Sixth Circuit's definition of what constitutes a *protected activity*, Askew's complaints suffice.

As to the fourth prong, Enterprise contends that Askew cannot demonstrate a causal connection between the alleged protected activity and her termination. Enterprise argues that Askew cannot establish that she would have been terminated "but for" her complaints of discrimination. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015). Askew asserts in response that the temporal proximity between her making complaints and her being terminated less than four weeks after she returned to work establishes that there is a sufficient causal connection for purposes of this prong. Askew also alleges that a reasonable juror could find that

she was terminated as early as October 2015, after Enterprise began looking for her replacement.

The Court finds that there is a genuine dispute regarding the causal connection between Askew's complaints and her termination. Askew first made a complaint about discrimination in June 2015 and was subsequently terminated in January 2016. This amounts to a seven-month gap between her protected activity and the adverse employment action. Askew has not established any evidence of temporal proximity between her complaints and termination that is consistent with the length of time courts have found to create an inference of retaliation. *See Alexander v. Ohio State Univ. College of Soc. Work*, 429 Fed.Appx. 481, 490 (6th Cir. 2011) ("This court has held than an inference of retaliation may be established based on temporal proximity of two or three months."). Without an additional showing of causation, the Court would not find a seven-month gap between Askew's first complaint and her subsequent termination to support an inference of retaliation. However, the Court notes that Askew was on FMLA leave for almost three months between June 2015 and January 2016. Not including her FMLA leave, only about four months passed between her claim of discrimination and her termination. Further, the Court considers Askew's argument that a reasonable juror could find that she was terminated in October 2015 because it has not been established that Enterprise was not attempting to hire Picklo on a permanent basis while she was on FMLA leave.

A question of fact exists as to whether the fourth prong has been satisfied, and the Court **DENIES** Enterprise's Motion as it pertains to Askew's Title VII and ELCRA retaliation claims.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Enterprise Leasing Company of Detroit, LLC's Motion for Summary Judgment (Doc # 34) is **GRANTED IN PART** and **DENIED IN PART**.

IT IS FURTHER ORDERED that Defendant Enterprise Leasing Company of Detroit, LLC's Motion for Summary Judgment (Doc # 34) is **GRANTED** as it pertains to Plaintiff La'Tasha Askew's FMLA interference claim.

IT IS FURTHER ORDERED that Defendant Enterprise Leasing Company of Detroit, LLC's Motion for Summary Judgment (Doc # 34) is **DENIED** as it pertains to Plaintiff La'Tasha Askew's FMLA retaliation claim and Title VII and ELCRA discrimination and retaliation claims.

s/Denise Page Hood<br>United States District Court Judge

Dated: August 27, 2019